Good morning, your honors. May it please the court, my name is Ryan McBride. I'm the appointed pro bono counsel for Jonah B. Watt in this petition for review. I'd like to reserve two minutes for rebuttal if I may. I'd like to focus primarily on two issues today. The first issue is whether Mr. B. Watt was denied due process in connection with his right to be represented by counsel at his removal hearing. The second issue is whether the Board of Immigration Appeals abused his decision to discretion by ignoring and failing to grant Mr. B. Watt's properly submitted and supported motion for remand in this case. Now, we believe that on both of these issues, Mr. B. Watt is entitled to a new removal hearing. Moving to the first issue, the right to counsel issue. By statute and regulation, every alien is entitled to have representation at the removal hearing. That is the right to counsel hearing. That is the right to have counsel at one's own expense. Nevertheless, because of the interests involved and the complexity of the immigration laws, this court has recognized that that right is constitutional in nature. And, indeed, this court has found that due process requires that an alien be given a reasonable time to locate counsel to represent him at his removal hearing. When that right is violated, it is the right to have counsel at one's own expense. And, indeed, that's all that Mr. B. Watt seeks here today, which is the opportunity to present his best case with counsel of his own choosing at a new removal hearing. Ginsburg Let me ask this, counsel. The government asserts that he waived his right to appeal. Would you address that issue? B. Watt I will, Your Honor. I think I want to say one thing as a preliminary matter. And that is, in effect, what the government is asking is that it benefit from its own constitutional violation in this case. That is to say that if, as we assert, Mr. B. Watt was denied due process and that he was unable or not given sufficient time to locate and secure counsel to represent him at his hearing, that would be a violation of the statute. And I think that's what the government is asking. And then to say that, in part, because he was not represented by counsel, somehow he should have known how to adequately preserve the issues for appeal and not waive appeal in this case seems like a catch-22 that would undercut the whole notion that due process affords aliens the opportunity, at least, to find an attorney to represent them. Kagan Well, it seemed to me that, as a stand-alone proposition, if he – if we were to agree that there was a counsel question, then we have the issue of prejudice, which the circuits are split on. And so far we've been able to dance around that question because either there was prejudice or whatever, so the Ninth Circuit has never actually landed on that issue. If we had to find prejudice, would we then inevitably be back into addressing the waiver question? Boutrous I don't believe so. And I believe that – well, let me start by saying this Court has danced around the prejudice issue. And, in fact, every case, I believe, that addresses the right to counsel, the Court is able to dance around it. I said dance around. Maybe I should say more accurately, we've declined to take a position. But you can use my words if you like. Boutrous I was going to use your words, but I like your words better. In fact, in every case I can find on that issue, the Court has found prejudice, and I think that is somewhat telling. In this case, there is prejudice in at least two different ways. One, it's undisputed that at the original removal hearing, the entire issue of asylum and or withholding was solved. It was simply not addressed. It was not raised. No evidence on those issues were presented. It was only after the fact, while the case was on appeal before the BIA, that Mr. Bewatt became aware of his entitlement or potential entitlement, I shall say, to asylum and withholding. And that's when he made a motion for remand or reopening on that issue. Had he been represented by counsel at his original removal hearing, counsel would have been able to marshal facts, and present evidence on that issue at his original hearing. And I think prejudice is established on that basis alone. And I'll remind the Court, of course, that the prejudice standard for right-to-counsel cases is fairly low. It's potentially affected the outcome. Given, in connection with his motion to remand, Mr. Bewatt successfully made out, we assert, a prima facie case for eligibility for asylum and withholding, we think that standard is met, and that if he had been represented by counsel in the underlying removal hearing, he would have been able, at least potentially, to make out a case for asylum and withholding. And that's all we have to do in order to satisfy the prejudice standard. I'll also add, though, that, at least according to the government, the government feels that there was significant prejudice here in that Mr. Bewatt apparently, according to the government, waived his right to appeal and did not preserve certain issues for this Court's review. And it's asserting those things, we believe, in part because Mr. Bewatt had no counsel to help him negotiate the maze of immigration laws. And so it is our position as well that prejudice is established by the fact that Mr. Bewatt purportedly waived these rights. Had there been counsel, counsel worth his salt, Mr. Bewatt would have been able to preserve those issues if they were issues at all. Of course, if he had counsel at the removal hearing, this wouldn't be an issue before the Court today. We believe that this issue, the right to counsel issue, is virtually dictated by this Court's prior holding in Rios Barrios. In that case, the Court found that six days, six business days, let me correct myself, six business days, the Court found that six business days was an insufficient time for the alien to find a counsel of his own choosing and found a due process violation on that basis. In Rios Barrios, like in this case, that alien was in detention the entire time, which obviously affects his ability to secure counsel. In this case, the immigration judge, through continuances, gave Mr. Bewatt a total of seven business days in which to locate counsel. That entire time, Mr. Bewatt was in detention. He was indigent. And apparently the only resource he had to bring to bear in order to find a counsel is the list of pro bono services that was given to him at his very first hearing. We, it is our position that under the circumstances of this case, and it's hard to imagine under any circumstance, especially for a time in which he might successfully find an attorney to represent him at his hearing. Let me quickly move to the second issue. And that issue relates to the motion to remand. While the case was pending appeal, Mr. Bewatt submitted papers to the BIA which requested that his case be sent back to Seattle so that he may work on his asylum application. It was only then that he became aware of this right. His papers satisfied all of the procedural and substantive requirements of a motion to remand. However, the BIA apparently did not consider those papers, or in any event, there is no indication on the record that it did. And for sure, it didn't articulate the reasons why, if it disagreed with Mr. Bewatt, either on procedural or substantive grounds, why it declined his request. There's simply nothing in the record to indicate that he, that the BIA considered his motion to remand at all. Although the BIA, from their perspective, because he had waived his right to appeal, they certainly have jurisdiction to determine whether or not Mr. Bewatt's motion to remand was in their jurisdiction. But then after that, why would they even decide any motions if they're correct about having no jurisdiction? Well, Your Honor, at the time Mr. Bewatt made his motion, and I'm trying to view it from Mr. Bewatt's perspective, the entire administrative record had been sent to the BIA. The BIA had established a briefing schedule in this case. And in fact, the BIA had sent notices to people writing letters on Mr. Bewatt's behalf saying, the BIA has jurisdiction in this case. Send your letters to the BIA, not to the immigration court. Under these circumstances, at least at the time Mr. Bewatt submitted his papers, the BIA felt it had jurisdiction. Now, subsequently, the BIA may find that somehow its jurisdiction was divested by its finding of waiver. But certainly, under the regulations, it was proper, since the appeal was pending at the time Mr. Bewatt submitted his papers, for him to send those papers to the BIA. Do you want to reserve your remaining time? I do. Thank you, Your Honor. I'd like to hear now from the government, please. Good morning, Your Honors. My name is Michelle Sarko. I'm here representing the Department of Justice in this matter. This case presents three issues. The first issue is whether the Petitioner failed to exhaust his administrative remedies by raising his due process claims before the Board in his appeal. As we set forth in our brief, we don't believe that he did properly raise those claims in his notice of appeal to the Board. If you go through his notice of appeal. You know, I'm not hearing you very well. Do you want to speak right into the mic? Sure. I'll try. We believe that he did not exhaust his claims on the notice of appeal. He did not raise those claims on the due process issues to the Board in his notice of appeal, that he didn't properly first raise those before the Board. And he was still unrepresented at that point. Is that right? Yes. He was unrepresented at that point. So we would give some latitude, read things as broadly as we could. Yes. No, I understand that. But if you go through and look at his notice, he doesn't argue anything that there was any error with regard to the immigration judge deeming that he had waived his right to appeal. He made no argument that he did not knowingly waive his appeal. And he did not assert that he was prevented from obtaining an attorney nor made aware of his rights at the hearing. Nor did he assert any fear of returning to Kenya or otherwise mention a claim for asylum in his notice of appeal. All he did say was that he didn't have a legal representative because he was detained and it took several days to contact his family. But he didn't assert that he didn't waive his right to appeal or that he didn't know knowingly make that waiver. Okay. Would he had if he waives the if he raised the constitutional question and statutory question about his right to counsel, but that necessarily in determining the prejudice of that implicates his waiver, hasn't he in effect raised that question as well? No, I don't believe so. Merely because he said, well, I didn't understand all my constitutional possibilities doesn't mean that he didn't understand that he was waiving his right not to appeal and that he chose instead to accept this decision of the immigration judge. And if you look at the language, the judge says, well, I'm making this decision because I don't have a legal representative. I'm making this decision today. And we accept this as final. And so he says, well, I guess I have to because I don't have any opportunity to do anything else right now. Now, is that a waiver? Well, I believe it is a waiver. I mean, he he basically said that he didn't have that he admitted that he was not in school properly. And so he didn't believe, you know, that he admitted basically he was out of status. And so from our perspective, he was looking at that and saying, well, I don't have the opportunity to do anything else because I'm out of status. I'm not eligible for relief. Therefore. If he'd had a lawyer, what would the lawyer have done here? Number one, he would have pressed for asylum probably. If he thought he had a valid claim, I suppose he would have. But I would point, Your Honor, to the immigration judge's questioning of Mr. Bewatt. When he went through and asked him to explain his rights in detail, they had the right to counsel. And if he couldn't afford one, he could try and get free legal counsel through the legal services system. The immigration judge then continued the hearing twice, a total of 12 calendar days, I believe, to allow him an opportunity to obtain counsel. But, you know, realistically, it's hard enough to get a high-paying lawyer in seven business days, let alone to find a lawyer when you don't have a lot of money. So why isn't this case like the Rios Barrio case, where I think the immigration judge's question was, well, I don't have the opportunity    I don't have the opportunity to get free legal counsel. And I think the immigration judge was well-intentioned here, it appears. I mean, he was giving him the right information, but he didn't give him time to execute on it. And so having some trouble understanding why, in this case, the Department of Justice takes such a hard-line position. Well, we would respectfully disagree that he didn't have sufficient time. He said he called one agency on the list and didn't say that he called the others. There was more than one organization on that list. And he's in detention, correct? Yeah, he's in detention. Making it a little harder to. Well, they allow them to make phone calls to try and obtain counsel when they're detained. They don't say you can't use the phone. And so the immigration judge also said if you have counsel that says, you know, that said they'll take your case, but we can't make it on that date, then I will entertain, you know, I will consider that and decide whether to continue the case further. However, he showed up on the second and third occasions saying they didn't have counsel. And on the second occasion, the judge made clear that if you arrive the next time and you don't have counsel or you don't have counsel contact me, then you must go forward on your own. So he was clearly on notice that that was going to be the case. But he had to show up. No, the counsel didn't show up is what I'm talking about. I understand, but he himself had to show up. Right. He did. And I wasn't saying that he wouldn't show up. I said if the counsel couldn't show up. He just wanted another couple of weeks. And the judge said, oh, I can't give you that. All the time they give that. They give a month. They give two months. It's a discretionary thing. And I don't think that you can say in this case that since there's no constitutional right, it's only a statutory right, and the continuances are within the discretion of the immigration judge. He did give him 12 calendar days. You can't say that it was abuse of discretion and that it was a violation of due process. I would also note that since he did accept the immigration judge's decision, that constituted a valid waiver. Therefore, the board had no jurisdiction over the appeal. And so therefore, when he filed his letter subsequently in which he asked the case to be remanded, the board had no jurisdiction over this, if you deem them to be a motion to remand, he had to file those with the immigration judge. Therefore, the court – the board lacked jurisdiction over those motions to remand, if that's what you're going to call them, as well as the appeal. Go back to something you said earlier. You said there's no constitutional right. There's no Sixth Amendment right, surely, but we have said, as have other courts, that there's the Fifth Amendment due process right that surrounds counsel. Well, there is a Fifth Amendment due process right, but that doesn't necessarily – I mean, it's a right to due process to present your case. It doesn't necessarily mean that you have a constitutional right to counsel at your own expense. That is a statutory right. Right. You do have a statutory and regulatory right. Right. And so here he had notice. He had the opportunity. He just didn't succeed in obtaining counsel at his own expense. I guess the question is, did he really have opportunity? And the government believes that he did have sufficient opportunity. I guess the Court will determine. The Court has no other questions. Thank you. Thank you. You may have a minute for rebuttal. Thank you, Your Honor. Let me spend that minute addressing quickly the exhaustion issue. And I'll just highlight factually what Mr. Biwa wrote in his notice of appeal to the Board of Immigration Appeals. He wrote two things that I think are particularly germane on the issue of whether or not the BIA had fair notice of this issue and could have dealt with it had it wanted  to. He wrote, on the one hand, during my case, I never had legal representative. That's at the administrative record at 53. He also wrote right below that, I don't know how my constitutional rights were conducted. I think both of these things, given the liberal standard that's applicable to pro se aliens, satisfy the exhaustion requirement here. And the BIA certainly could have dealt with this had they chose to. I also want to briefly address this issue of the seven days. Clearly, the immigration judge did at the second hearing say, if you show up for the third hearing and you don't have a counsel, I'm going to make you defend yourself. And that's exactly what happened. I think it's important to note that at the second hearing, Mr. Biwa did tell the immigration judge that he had tried calling one of these agencies on the list that was referred to him, and that they told him that it would take a while. And I think that's consistent with what we know is the case, in that seven days simply is an insufficient time to hope that any alien can have an opportunity to find a counselor to represent him at a removal hearing. Now, certainly there are cases and there will be cases in which an alien, although wanting to, won't have enough time, but seven days is not that case. Thank you. Thank you. The case of Biwa v. Ashcroft is submitted. I'd also like to thank you, Mr. McBride, for participating in the circuit's pro bono program. It's of assistance to the judges to have these cases briefed, as I know it is, to the government, rather than having to deal with pro se briefings. So everybody appreciates the volunteering of your time and also appreciates the argument from the counsel for the government. We'll hear next the case of Favi v. Ashcroft.
judges: B. Fletcher, McKeown, Gould